1. Defendant's motion for summary judgment is denied;

2. Plaintiff's cross-motion for summary judgment is granted; and

3. The Regional Commissioner of Customs at the port of New York shall accept Entry No. 79–638078–8 of August 15, 1979, and deliver the merchandise in issue to plaintiff, without requiring the posting of an Antidumping Bond or the production of information pursuant to section 208 of the Antidumping Act of 1921, as amended (19 U.S.C. §167).

ZENITH RADIO CORPORATION, PLAINTIFF v. UNITED STATES, DE-FENDANT

Court No. 80–5–00861

*Order on Claims of Privilege*

(Dated May 29, 1981)

MALETZ, *Judge*.

I(a) In an affidavit executed on March 15, 1981, Alexander M. Haig, Jr., Secretary of State, has claimed state secrets privilege for the following documents or specified portions thereof:

---

[12] Defendant, in a letter dated May 14, 1981, called to the Court's attention a recent decision of the United States Court of Appeals for the Second Circuit (Feinberg, C.J.) dated May 12, 1981, *Alberta Gas Chemicals, Ltd.* v. *Celanese Corporation and Celanese Chemical Company, Inc.*, Docket No. 80–9021. In that action, Alberta (the Canadian exporter) charges the defendants with fraud and unfair competition, by representing false testimony before the Commission concerning their plans to expand methanol production capacity and their estimate of demand in the United States for methanol. The complaint prayed for an injunction requiring Celanese to disclose the true facts to the Commission, and also sought damages. Judge Sofaer of the United States District Court for the Southern District of New York, in a memorandum opinion and order dated October 8, 1980, dismissed the action on the grounds that the complaint failed to state a cause of action, and that even if the complaint stated a cause of action, the matter fell within the jurisdiction of the United States Court of International Trade. The District Court also noted that under the doctrine of primary jurisdiction the issues relating to Celanese's conduct during the hearing before the Commission should be resolved, in the first instance, by the Commission. The Circuit Court reversed, noting that Alberta did not call the alleged perjury to the attention of the Commission and that the instant action was still pending. The Court of Appeals ruled that the Commission has the power to protect the integrity of its own proceedings and should have an opportunity to resolve the perjury issue. Consequently, the case was remanded to the District Court with instructions to stay all proceedings before it pending further proceedings before the Commission.

In response to defendant's letter of May 14, 1981, plaintiff submitted a letter to the Court, dated May 18, 1981, agreeing with defendant's observation that neither the United States nor the International Trade Commission is a party in the *Celanese* matter, and suggesting that the *Celanese* decision should not affect the timing or content of this Court's decision. I agree with the comments of counsel for both parties concerning the *Celanese* case.

| Document No. | Date | Title or description |
|---|---|---|
| 46 | Apr. 4, 1978 | Cable: 78 Tokyo 5629, Japanese Reaction to Color TV Antidumping Duty Assessments (Paragraph 10) |
| 47 | Mar. 31, 1978 | Cable: 78 Tokyo 5369, Japanese Protest Color TV Antidumping Duty Assessments (Paragraph 5) |
| 48 | Mar. 30, 1978 | Cable: 78 Tokyo 5241, Japanese Protest Color TV Antidumping Duty Assessments (Paragraph 1) |
| 58 | Mar. 27, 1978 | Diplomatic Note from the Embassy of Japan |

(b) Pursuant to the court's order of May 13, 1981, these documents were delivered to the court under seal on May 28, 1981, for examination by the court *in camera*.

(c) The court has carefully examined each of these documents *in camera* and on the basis of such examination orders:

(1) That the claim of state secrets privilege be sustained as to the specified portions of documents 46, 47, and 48, and that such portions shall not be disclosed to plaintiff.

(2) That the claim of state secrets privilege as to document 58 be denied as moot since it has already been publicly disclosed by the Government on two prior occasions. Thus the document was attached as an exhibit to an affidavit of Robert H. Mundheim, General Counsel of the Department of the Treasury, that was filed in the United States District Court for the District of Columbia in connection with the *Compact* litigation. A copy of this affidavit including the document in question was also filed in this court in connection with the Government's cross-cross-motion for summary judgment in this case.

II(a) In an affidavit executed on March 16, 1981, William E. Brock, United States Trade Representative, has claimed executive privilege for six documents stating that each is an intragovernmental or intergovernmental communication which contains the advice, recommendations, or statements of opinion of U.S. Government employees or which indicates negotiating positions of the U.S. and Japanese Governments. The six documents for which such privilege is claimed are as follows:

1. A memorandum dated April 13, 1977 from Alan Wm. Wolff to members of the Trade Policy Review Group concerning the continuing discussions with the Japanese regarding color TV's.

2. A memorandum of April 1977 from Tom Graham, Deputy General Counsel, to Ambassador Robert Strauss concerning the Zenith countervailing duty case. Attached is a proposed press statement and a briefing paper.

3. A draft Memorandum of Understanding concerning TV's dated April 19, 1977 with the following attachments:

(1) Draft Notes to be exchanged containing provisions concerning trade in color television receivers

(2) Draft agreed minutes

(3) Draft side letters

4. Draft Side Letter of U.S. Administration of Agreement dated May 5, 1977.

5. A memorandum of May 1977 from Robert S. Strauss to members of the Economic Policy Group concerning color TV's. Attached is a draft memorandum to the President concerning the color television receiver agreement with Japan.

6. Drafts, dated May 20, 1977, of letters of notification to the Speaker of the House and the President of the Senate concerning import relief for the color television industry.

(b) Pursuant to the court's order of May 13, 1981, these documents were delivered to the court under seal on May 28, 1981 for examination by the court *in camera*.

(c) The court has carefully examined each of these documents *in camera*.

(d) The court has carefully weighed the government's need in the public interest in maintaining the confidentiality of each of the foregoing documents as against the need of the plaintiff in prosecuting this action.

(e) The court has concluded that the government's need in the public interest in maintaining the confidentiality of each of these six documents far outweighs any need of the plaintiff in prosecuting this action and therefore orders that the claim of executive privilege for each of such documents be sustained and that such documents shall not be disclosed to plaintiff.

III(a) In an affidavit executed on March 13, 1981, Admiral Bobby Ray Inman, Acting Director of Central Intelligence, makes reference to two classified *in camera* affidavits in which state secrets privilege is claimed.

(b) Pursuant to the court's order of May 13, 1981, the two *in camera* affidavits were on May 27, 1981 hand delivered to the court personally.

(c) The court has carefully examined *in camera* the two affidavits.

(d) On the basis of this examination, the court orders that Admiral Inman's claim of state secrets privilege contained in his *in*

*camera* affidavit, together with the claim of state secrets privilege made by an official referred to in that affidavit be sustained.